MUELLER v. COFFMAN.

Opinion delivered January 14, 1918.

1. APPEAL AND ERROR—VERDICT—LEGAL EVIDENCE TO SUPPORT IT.—A verdict will not be disturbed on appeal when supported by any legal evidence, and the court will not consider how greatly the verdict is contrary to the preponderance of the evidence.

2. WITNESSES—COMPETENCY—BELIEF IN SUPREME BEING.—A witness expressing the belief that man is punished according to his acts and that the power and disposition to punish comes from an Omnipotent Supreme Being, is not incompetent under article 19, section 1, of the Constitution of 1874, which provides that, "No person who denies the being of a God shall be competent to testify as a witness in any court."

3. WITNESS—BELIEF IN SUPREME BEING—WRITINGS OF WITNESS AS EVIDENCE.—In determining the competency of a witness on the ground of disbelief in a Supreme Being, writings of the witness showing atheistic tendencies are admissible.

4. TRIAL—PREPONDERANCE OF THE TESTIMONY—DUTY TO SET ASIDE VERDICT.—It is the duty of the trial court to set aside a verdict which he believes to be against the preponderance of the testimony.

Appeal from Greene Circuit Court, First Division; R. H. Dudley, Judge; reversed.

R. P. Taylor, for appellant.

1. The verdict is not supported by the evidence. There is no proof of the agreement by which Coffman was discharged from liability and that Mueller became solely liable, or of the delivery to Mueller as collateral security of certain notes and mortgages. 130 Ark. 374. The evidence at least is vague and conjectural. Really the evidence shows that no notes and mortgages were transferred to Mueller. But the jury totally disregarded this evidence. 54 Ark. 214; 117 Id. 483; 118 Id. 349; 34 Id. 632; Ib. 640; 70 Id. 385.

2. Outside of Coffman's evidence there is no testimony to sustain the verdict. Coffman was an atheist and incompetent to testify. Art. 19, § 1; art. 3, § 26, Const.; 7 Report, Calvin's Case, 17; Peake's Report, 11; 1 Atk. 21; 7 Conn. 66; Fed. Cases Nos. 17050, 15586; 4 Am. Dec.

179; 2 Har. 37; 17 Ill. 541; 18 Johns (N. Y.) 98; 2 Watts
& S. 262; 2 Tenn. 80; 12 Ark. 101; 42 L. R. A. (Ann.) 568;
18 Me. (6 Shep.) 157.

3. The statements of the circuit judge show that the
verdict was against the evidence and it should be set
aside. 126 Ark. 427; 196 S. W. 477.

The appellee, *pro se.*

1. Appellant agreed to pay the notes—the evidence
shows it. The great preponderance is with the appellee.
The findings of the jury are in harmony with the evi-
dence and the instruction of the court.

2. The remarks of the judge do not find that the
verdict is against the weight of the evidence. There was
substantial evidence to support it and the verdict of the
jury must be sustained.

3. Coffman was competent to testify under the
Constitution, and his testimony is supported by Brecken-
ridge and Newberry.

SMITH, J. The parties to this litigation were
among the principal stockholders in the Breckenridge
Mercantile Company, a corporation doing business at
Paragould, Arkansas, but which changed its name to the
Mueller Mercantile Company, under which name it con-
tinued in business until its failure in 1911. The corpora-
tion had become heavily involved and its paper was ma-
turing and the parties to this litigation had jointly en-
dorsed the two notes herein sued on. This cause was
tried upon the theory that Coffman was insisting that the
mercantile company pay the notes; while Mueller insisted
that the company could not spare the money from its busi-
ness to do so, and urged that the payment of the notes be
postponed, and agreed with Coffman that, if he would
consent to the extension of the notes, he (Mueller) would
become the payer thereof as between himself and Coff-
man. This Mueller denied. The notes were not paid
when they fell due, and payment was enforced by suit
against the endorsers, whereupon Coffman brought this
suit against Mueller to recover the sum paid by him in

satisfaction of the judgment against him on account of the notes, and he recovered judgment in the court below, and this appeal has been duly prosecuted.

(1)    It is first insisted that the verdict of the jury is unsupported by the evidence.   But this position can not be sustained, because Coffman testified unequivocally to the existence of the agreement stated above, and we need not, therefore, consider how greatly this verdict is contrary to the preponderance of the evidence, as it has, as a basis, evidence legally sufficient to sustain it.

(2-3)    It is argued that the verdict is based upon the testimony of Coffman alone, and that he was an incompetent witness, because of his atheistic belief.   Coffman admitted the authorship of some verse, of more or less ambiguous meaning but of atheistic trend, which was published in the local paper, and his examination by opposing counsel indicated the absence of a belief in "the being of a God," but, in response to questions by the court he gave the following answers:

"The Court:   Let me ask the witness a question, Mr. Taylor.   Do you believe in an omnipotent Supreme Being, who rewards one or punishes him according to his sins committed while here?"

"A.   Yes, sir; in a Power; I believe we are punished according to our acts.

"Q.   And that that power and disposition to punish comes from an omnipotent Supreme Being?

"A.   Yes, sir.

"The Court:   I think, Mr. Taylor, under this showing that the witness is competent.   Let the objection to his competency be overruled.   Recall the jury, Mr. Sheriff."

The introduction of the verse was competent, for, in the case of *Farrell* v. *State,* 111 Ark. 187, we said:

"The opinion and belief of men can be known only by what they have said or written, and their declarations, either verbal or written, are the proper evidence of their opinion."

But the witness expressed the belief that we are punished according to our acts and that the power and disposition to punish comes from an Omnipotent Supreme Being. One possessing this belief is not incompetent under section 1 of article 19 of the Constitution of the State, which provides that "No person who denies the being of a God shall be competent to testify as a witness in any court."

(4) In overruling the motion for a new trial the court said:

"I must confess that the verdict as returned by the jury was somewhat of a surprise to the court, but as there were disputed questions of fact for the determination of the jury, and, though contrary to the judgment of the court as to what the verdict should have been, I do not deem it proper to disturb the verdict of the jury. I think if you were to take Gordon (meaning Mr. Beauchamp, attorney for plaintiff) to one side and ask him to make a confidential statement, he would doubtless admit that he won a lawsuit which he expected to lose."

Counsel for appellant insists that this statement by the court is an expression of the view that the verdict of the jury was contrary to the preponderance of the evidence. And in this we think he is correct. Such appears to us to be a fair construction of the language of the court. We have pointed out in several cases the difference in the duty to be performed by the trial court in reviewing the verdict of the jury upon a motion for a new trial, as distinguished from the duty of this court in passing upon the sufficiency of the evidence to sustain the verdict. This court does not pass upon or consider any question of preponderance. We consider only the legal sufficiency of the evidence to support the verdict, and, in doing so, give to the evidence having that purpose its highest probative value; while with the trial court a different duty abides. That court sees the witnesses, hears them testify, and is afforded opportunities we can not have to weigh the evidence, and the duty, therefore, properly rests with that court to pass upon the question of preponderance. In

doing this, the court, of course, should give proper weight to the verdict of the jury and should not set it aside lightly, but if it clearly appears, and the court so finds, that the verdict is against the preponderance of the evidence, it becomes the duty of the court to set it aside. Under the statement of the court, set out above, we think the court should have granted a new trial, and it will be now so ordered. *Spadra Creek Coal Co.* v. *Harger,* 130 Ark. 374, 197 S. W. 705; *Spadra Creek Coal Co.* v. *Callahan,* 129 Ark. 448, 196 S. W. 477; *Twist* v. *Mullinix,* 126 Ark. 427, 190 S. W. 851.

HART, J., dissents.