CULPEPPER, Judge.
Plaintiff seeks workmen’s compensation benefits for total and permanent disability resulting from an accident sustained while working for Rust Engineering Company. Defendant is the employer’s insurer. The district judge found plaintiff totally and permanently disabled but denied penalties and attorney’s fees. Defendant appealed. Plaintiff answered the appeal, seeking penalties and attorney’s fees.
There is little dispute as to the facts. The plaintiff, 46 years of age, was working for Rust Engineering Company as a pipefitter during construction of Pineville-Kraft Paper Plant. His wages were $4.45 an hour and he usually worked 48 hours a week, including overtime. At the time of the accident on July 17, 1967, he was a member of a crew engaged in laying a large water line. Pieces of steel pipe, coated with cement and ranging in size from 30 inches to 20 inches in diameter and up to 30 feet in length, were being laid in a trench. The pipe was lifted by a cherry picker into position on cribbing, consisting of 4" x 4" timbers, located along the trench. It was the duty of the pipefitters to erect this cribbing and then to fit the pieces of pipe together by moving them manually, sometimes using a heavy pry bar, in order that the joints could be welded. After the welders completed their work, the pipe-fitters then had to grind off the excess slag, dope and wrap the pipe and assist in lowering it into the ditch. The work was strenuous physical labor, requiring stooping, bending and heavy lifting.
On the date of the accident, July 17, 1967, plaintiff was walking across the trench on a “4 by 4” timber. It either slipped or rolled, causing him to fall into the 7 feet deep trench in a sitting position. He was momentarily rendered unconscious. On recovering he had a severe “burning” in his colon. It was near quitting time, so he went home and didn’t report to the first-aid station until the next morning.
He complained at the aid station of soreness in his back. But, on the nurse’s advise, he continued to work to see if the soreness would subside. The pain persisted and on July 31, 1967, he was seen by the company physician, Dr. Robert L. Pre-vost. This physician diagnosed a “right inguinal hernia, possible ruptured inter-vertebral disc due to hernia.” He found plaintiff disabled and recommended surgical repair of the hernia and orthopedic consultation regarding the back. Pursuant to this medical report, Rust’s safety engineers would not allow plaintiff to return to work. He has not worked for Rust since August 1, 1967.
At the request of Dr. Prevost, plaintiff was seen on August 11, 1967 by Dr. Phillip Bonn, a neurological surgeon in Shreveport. This physician diagnosed a hernia, which needed surgical repair, and a possible ruptured lumbar disc. He recommended that if the back pain did not subside, the disc might also require surgical repair.
On September 1, 1967, plaintiff was seen by Dr. P. M. Davis, Jr., an orthopedic surgeon in Alexandria. He diagnosed “fracture, second lumbar vertebra, healing” and recommended a corset and drugs for pain. He was of the opinion the duration of plaintiff’s disability was indefinite, but estimated he would be off work for 6 weeks.
*390 Defendant made weekly payments of workmen’s compensation for the period from August 1, 1967 through November 21, 1967, at which time payments were stopped. Apparently, defendant terminated payments because it learned that plaintiff had worked as a pipefitter for another concern in Opelousas during part of August and September and then, on October 25, 1967, had gone to work as a pipefitter for Johnson Service Company, a subcontractor under Rust, on the Pineville-Kraft Plant construction job. Actually, plaintiff was still working in this capacity at the time of the trial of this suit.
After weekly payments were terminated as of November 21, 1967, attempted negotiations to resume payments failed and this suit was filed on January 10, 1968. The trial took place on March 4, 1968. There is a stipulation of both parties filed in this Court of Appeal that plaintiff’s hernia was surgically repaired on June 3, 1968, and he returned to work on July 15, 1968. The stipulation also states that the defendant paid compensation during this period of time. It does not state what type of work plaintiff returned to after July 15, 1968.
At the trial, the substantial issue was the type of work performed by plaintiff for Johnson Service Company after he entered their employment on October 25, 1967. There is no dispute that he worked as a pipefitter at an hourly rate of $4.45 an hour (the same rate he was receiving at the time of the accident) until about 2 weeks before the trial, at which time he was promoted to foreman, and his rate of pay increased to $4.80 per hour. He worked regularly, 48 hours per week, missing only 6 days during the period from October 25, 1967 until the date of the trial.
Johnson Service Company had a subcontract to install instruments at the paper plant. This is done with pieces of steel or copper tubing, measuring either 1/2 inch or inch in diameter and in short lengths weighing about 5 pounds each. The evidence shows that plaintiff knew more about installing instruments than the other members of this small crew. He and the other crew members testified that plaintiff supervised the work and the rest of the crew did most of the actual physical labor. There is nothing to contradict the testimony of plaintiff and his witnesses that he performed no heavy lifting or other strenuous physical labor while working for Johnson. The superintendent of construction for*-Johnson testified that plaintiff earned his wages because of his knowledge of the installation of these instruments.
Plaintiff testified that all during the time he was working for Johnson he continued to have pain from his hernia and his back and that he was unable to perform heavy manual labor. There is no testimony to contradict this. Actually, the defendant does not dispute that plaintiff had a hernia and that he had a back injury.
The Workmen’s Compensation Act, LSA-R.S. 23:1221, defines permanent total disability as a lack of ability “to do work of any reasonable character.” In the landmark case of Knispel v. Gulf States Utilities Company, Inc., 174 La. 401, 141 So. 9, our Supreme Court construed this statute to mean that an employee is disabled if he is unable to perform work of the same or similar description that he was performing at the time of the accident. The court has consistently resisted all assaults on this position. The jurisprudence, as now established, is stated in Bellard v. Insurance Company of North America, La.App., 193 So.2d 922 (3d Cir. 1967) as follows:
“Under the jurisprudence, a skilled or semi-skilled workman is regarded as totally disabled whenever an accident causes the loss of those physical faculties which had enabled him to earn a living performing the duties in which injured, even though despite his injuries he may be able to qualify and perform successfully other types of work. Smith v. Travelers Insurance Company, La.App. 3 Cir., 174 So.2d 241 and cases therein cited; cf., Anderson v. Rowan Drilling *391 Co., [La.App. 3 Cir., 150 So.2d 828] cited above.”
Under this jurisprudential rule, the plaintiff in the present case is totally and permanently disabled. At the time of the accident he was performing heavy manual labor. The preponderance of the evidence shows that at the time of the trial he was disabled from performing this type of work. The fact that he was able to perform lighter work, although at the same rate of pay, does not disqualify him from benefits.
The next issue is penalties and attorney’s fees. Plaintiff makes a strong argument that defendant stopped payments without any medical report that plaintiff had recovered and without investigating to determine the type of work plaintiff was doing for Johnson. However, under all of the circumstances, we are unable to find manifest error on the part of the trial judge in denying penalties and attorney’s fees. Plaintiff actually never did stop work. He continued to work for Rust for about 2 weeks after the accident, then worked as a pipefitter in Opelousas during August and September and, on October 25, 1967, he started work for Johnson and was working for them as a pipefitter at the time of the trial. There was sufficient reasonable cause for termination of payments that the defendant’s actions were not arbitrary.
As stated above, there is a joint stipulation of both parties filed in this court that subsequent to the trial in the district court plaintiff’s hernia was surgically repaired on June 3, 1968, and he returned to work on July 15, 1968. The stipulation does not state whether plaintiff returned to substantially the same kind of work he was performing at the time of the accident. Ordinarily, a decree awarding benefits for total and permanent disability cannot be reopened until the expiration of 6 months after the judgment becomes final, LSA-R.S. 23:1331. However, under the circumstances, we think the right should be reserved to the defendant to reopen this case as soon as the judgment herein becomes final, even though the 6-month period has not expired, Wade v. Calcasieu Paper Company, La.App., 95 So.2d 725; Fontenot v. Myers, La.App., 93 So.2d 245; Lambert v. American Policyholders Ins. Co., La.App., 100 So.2d 267; Young v. So. Cas. Ins. Co., La.App., 188 So.2d 437.
For the reasons assigned, the judgment appealed is affirmed, reserving to the defendant the right to reopen this case immediately after the judgment herein becomes final, without waiting for the elapse of the 6-month period provided by LSA-R.S. 23:1331. All costs of this appeal are assessed against the defendant appellant.
Affirmed.